1
2
3
4
5
6
7
8                           **UNITED STATES DISTRICT COURT**
9                         **EASTERN DISTRICT OF CALIFORNIA**
10
11   ROBERT W. WASHINGTON,                    )   Case No.: 1:09-cv-01801-AWI-JLT
                                              )
12                      Petitioner,           )   FINDINGS AND RECOMMENDATIONS TO
                                              )   DENY PETITION FOR WRIT OF HABEAS
13             v.                             )   CORPUS (Doc. 1)
                                              )
14   D. G. ADAMS, Warden,                     )
                                              )   ORDER DIRECTING THAT OBJECTIONS BE
15                      Respondent.           )   FILED WITHIN TWENTY DAYS
     _____ )
16

17   Petitioner is a state prisoner proceeding pro se counsel with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.

19                              **PROCEDURAL HISTORY**

20          Petitioner is in custody of the California Department of Corrections and Rehabilitation

21   ("CDCR") serving an indeterminate sentence of thirty-two years to life plus a determinate sentence of

22   twenty-three years, pursuant to a June 7, 2006 judgment of the Superior Court of California, County of

23   Kern (the "Superior Court"), for one count each of assault with a semi-automatic firearm (Cal. Pen.

24   Code § 245(b)), and making a criminal threat (Cal. Pen. Code § 422(a)), and two lesser-included

25   misdemeanors. (Lodged Document "LD" 19 (Clerk's Transcript on Appeal ("CT") 126; 236-237; 240-

26   246).  The jury also found that Petitioner had suffered nine prior "serious" or "violent" felonies (Cal.

27   Pen. Code §§ 667 and 667.5), and found true a special allegation of personal use of a firearm (Cal.

28   Pen. Code § 12022.5(a)).  (LD 21, pp. 3-4).

                                        1

Petitioner subsequently filed a direct appeal, raising challenges to four jury instructions and two challenges to his sentence, in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the conviction in an unpublished on January 8, 2008.  (LD 4).   On March 12, 2008, the California Supreme Court denied Petitioner's Petition for Review.  (LD 11; 12).  Petitioner filed a state habeas petition in Superior Court that was denied on December 16, 2008, raising the three claims of ineffective assistance of counsel.  (LD 5; 6).  On February 20, 2009, the 5th DCA denied Petitioner's subsequent state habeas petition.  (LD 7; 8).  The California Supreme Court denied Petitioner's final state petition on September 17, 2009.  (LD 9; 10).

On October 1, 2009, Petitioner filed the instant petition, raising the three grounds for relief relating to ineffective assistance of counsel.  (Doc. 1).  On October 26, 2009, Petitioner filed an addendum to the petition and a motion to supplement the petition with five additional claims exhausted in his direct appeal, including the instructional and sentencing challenges.  (Doc. 10).  Through an administrative error, the Court did not rule on Petitioner's October 26, 2009 motion before Respondent filed an answer to the original petition and its three ineffectiveness claims on May 17, 2010.  (Doc. 24).  Petitioner duly filed his Traverse to the original Answer on August 25, 2010.  (Doc. 30).  Because the Traverse addressed issues raised in the addendum, Respondent objected and filed a motion to permit a sur-Reply.  (Doc. 31).  On September 13, 2010, recognizing the error, the Court granted Petitioner's motion to supplement his original petition with the five claims contained in the addendum and granted Respondent additional time to file an Answer to those new claims.  (Doc. 32).  On November 12, 2010, Respondent filed a supplemental Answer (Doc. 34), and on June 22, 2011, Respondent filed a supplemental Traverse.  (Doc. 39).

Respondent concedes that all eight grounds for relief in the petition and supplemental petition have been fully exhausted.  (Doc. 24, p. 7; Doc. 34, p. 2).

**FACTUAL BACKGROUND**

The 5th DCA's unpublished decision does not contain a summary of the pertinent facts in the case since Petitioner raised only instructional and sentencing issues in his direct appeal.  However, in his first state habeas proceeding, the Superior Court's written decision contains a brief statement of facts that the Court will adopt:

2

The incident occurred on or about March 16, 2006.  At the time, April Sumlin and Montez Sumlin Sr., an ex-spouse [were] estranged.  Ms. Sumlin began a romantic relationship with petitioner.  Apparently, as gleaned from the transcript of the preliminary hearing, petitioner and Mr. Sumlin Sr. had argued because April Sumlin informed Montez Sumlin Sr. that he better pick up their children because she was afraid of petitioner.  Meanwhile, April Sumlin informed petitioner that she wanted to put [petitioner's] remaining belongings on the front step of the apartment where Montez Sumlin resided.  What ensued during the evening was that Mr. Montez Sumlin was punched by petitioner and struck on the back of his head by an automatic weapon after opening a gash requiring several staples to close.  When Mr. Jeffrey Davis was awakened by the commotion, he came out to investigate.  Petitioner brandished the weapon by pointing it at the face of Davis and threatening to kill him if he did not go back into the apartment.  Petitioner ran to the car where Ms. Sumlin was sitting with her son Montez Sumlin, Jr. and left her premises.

(LD 6, pp. 1-2).

**DISCUSSION**

I.      Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

3

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. 326, 405-406 (2000). A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(per curiam).

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA.  If fairminded jurists could so disagree, habeas relief is precluded.  Richter, 131 S.Ct. at 786. As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in the state criminal justice systems,'" and not as a means of error correction.  Richter, 131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens, J., concurring in judgment).  The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus

4

from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 131 S.Ct. at 787-788.

Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1398 ("This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at the same time–i.e., the record before the state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d),  the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker,

501 U.S. 979, 803 (1991);  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

court decided the petitioner's claims on the merits but provided no reasoning for its decision, the

federal habeas court conducts "an independent review of the record...to determine whether the state

court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis,

223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

"[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."

Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court denied the petitioner's

claims on procedural grounds or did not decide such claims on the merits, the deferential standard of

the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v.

Morgan, 313 F.3d at 1167.

        The prejudicial impact of any constitutional error is assessed by asking whether the error had

"a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding

that the Brecht standard applies whether or not the state court recognized the error and reviewed it for

harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate

prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S.

648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective

assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice

standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila

v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir.

2009).

        III.    Review of Petitioner's Claims.

        The instant petition itself alleges the following grounds for relief: (1) ineffective assistance of

counsel in failing to investigate the case; (2) ineffective assistance of counsel in failing to make

objections; (3) ineffective assistance of counsel in failing to call certain witnesses; (4) instructional

error in the reasonable doubt instruction; (5) instructional error in CALCRIM No. 1300; (6) giving

CALCRIM No. 224 lowered the prosecution's burden of proof; (7) imposition of the upper term

sentences violated Petitioner's Sixth and Fourteenth amendment rights to a jury trial and due process; and (8) insufficient evidence to prove one of the prior convictions.  (Docs. 1 & 10).

A.   Ineffective Assistance of Counsel (Failure to Investigate)

Petitioner initially contends that he was denied his Sixth Amendment right to the effective assistance of trial counsel because his attorney failed to properly investigate and raise Petitioner's lack of competency at the time of the offense and his incompetency to stand trial.  (Doc. 1, p. 7).  These contentions are without merit.

1.   The Superior Court Ruling.

The Superior Court rejected Petitioner's claims as follows:

Petitioner contends that due to his developmental disability, and being under psychiatric care, petitioner was incompetent to stand trial.  The statutory requirements of competency to stand trial are such that petitioner is unable to understand the proceedings, and unable to assist his counsel in conducting his defense.  P.C. Sections 1368, 1370.1.  The trial judge can raise this matter, P.C. Section 1368(a), or defense counsel can raise it in a motion.  P.C. Section 1368(b).  Petitioner does not supply enough information to this court.  For example, for what mental illness was petitioner under psychiatric care?  What is the nature of his developmental disability? Petitioner supplies no transcripts to show any doubt on either the part of the trial judge or his counsel, that petitioner did not understand the nature of the proceedings.  The fact that a defendant is recalcitrant or uncooperative does not necessarily mean that he or she is incompetent.  [Citations.] In fact, petitioner's comment at the end of the preliminary hearing that "if only the judge knew the whole story", points to his understanding of the proceedings.  Petitioner provides no declaration about informing his counsel of any impediments to his assisting counsel with the conduct of the trial.  He provides no transcripts that the trial judge doubted petitioner's competency.  [Citations.] There is no abuse of discretion where the judge had no doubt that the defendant understood proceedings or demonstrate [sic] lack of competency at trial. [Citation.]

(LD 6, p. 3).

2.   Petitioner Was Not Denied The Effective Assistance Of Counsel.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to Strickland 's two-pronged test.  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the appeal. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state court decision unreasonably applied this general Strickland standard for ineffective assistance.  Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420.  In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable.  Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

As a preliminary matter, the Court must determine what standard of review to apply to the first three grounds for relief as a result of their different procedural postures.  Respondent notes that grounds one and three were presented to the Superior Court in a state habeas petition, which included an exhibit, the affidavit of Montez Sumlin, Jr., in support of ground three.  (LD 5; 6).  Petitioner then presented all three ineffectiveness claims to the Court of Appeal, but without any supporting exhibits, and those three claims were summarily denied without a reasoned decision.  (LD 7; 8).  Finally, Petitioner presented all three claims to the California Supreme Court, including five exhibits, and these

8

1  claims were again summarily denied.  (LD 10).  Under the "look through" doctrine of <u>Ylst v.</u>

2  <u>Nunnemaker</u>, 501 U.S. 797, 804-805 n. 3 (1991), the federal court will "look through" the summary

3  denials to the last reasoned decision of the state court.

4       Thus, as Respondent correctly reasons, the last reasoned decision vis-à-vis ground one and that

5  part of ground three for which no new exhibits were presented to the state high court, was the Superior

6  Court denial of Petitioner's first state habeas petition.  In so doing, the Court will apply the standard

7  described *supra*, i.e., whether the state court adjudication was contrary to or an unreasonable

8  application of clearly established federal law, as set forth in <u>Strickland</u>.  28 U.S.C. § 2254(d).

9  However where, as in ground two and a portion of ground three, the state court decided the

10 petitioner's claims on a summary denial on the merits, but provided no reasoning for its decision, the

11 federal habeas court conducts "an independent review of the record...to determine whether the state

12 court [was objectively unreasonable] in its application of controlling federal law."   <u>Delgado v. Lewis</u>,

13 223 F.3d 976, 982 (9th Cir. 2002); <u>see</u> <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).

14 "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."

15 <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

16      The state court will be deemed to have adjudicated the federal constitutional claim if it either

17 cites directly to federal authority or cases which themselves rested on federal authority.  <u>Baker v.</u>

18 <u>Blaine</u>, 221 F.3d 1108, 1112 (9th Cir. 2000).   As to ground one and part of ground three, both alleging

19 ineffective assistance of counsel, the last reasoned decision was that of the Superior Court, which

20 applied the following legal standard to those claims:

21      To prove ineffectiveness of counsel, petitioner needs to show that counsel's representation fell
        below professional norms, and that petitioner suffered prejudice[.] Petitioner needs to show [ ]
22      a causal relationship between the defective representations making it probable that petitioner
        would be either acquitted or convicted of a lesser included offense.  <u>Strickland v. Washington</u>
23      (1984) 466 U.S. 668, 594.  Petitioner needs to show prejudice as a demonstrable reality, not a
        figment of petitioner's imagination.  <u>In re Avena</u> (1996) 12 Cal.4th 694, 727, <u>In re Sino</u> (1989)
24      48 Cal.3d 1247, 1257
        .
25 (LD 6, p. 2).

26      Having identified the appropriate standards of review, the Court now turns to the merits of

27 Petitioner's contentions.  Petitioner's claim that his attorney failed to properly investigate potential

28 mental health defenses is deficient for several reasons.  First, counsel's failure to investigate and raise

a mental health defense is insufficient only if the petitioner can establish that counsel had reason to know that petitioner's mental health might be impaired.  Hoffman v. Arave, 455 F.3d 926, 932 (9th Cir. 2006), vacated in part on other grounds by Arave v. Hoffman, 128 S.Ct. 749, 169 L.Ed.2d 580 (2008); U.S. v. Miller, 907 F.2d 994, 998-999 (10th Cir. 1990(ineffective assistance of counsel claim insufficient without evidence that petitioner told counsel relevant information).  Here, however, nothing in the record indicates that Petitioner made his attorney aware of potential mental health problems.  Indeed, it appears that Petitioner is contending that the fact that he was being housed at the Kern County Mental Health correctional facility was, by itself, sufficient information to alert counsel to the fact that Petitioner had mental health issues.  As Respondent observes, no Supreme Court authority holds that the mere fact that an inmate is being housed in a mental health facility imposes on counsel a Sixth Amendment obligation to investigate mental health issues for a trial defense.

Second, even had counsel investigated and found evidence to support a mental health defense, such evidence would have been inconsistent with the defense presented at trial, i.e., that the victim, not Petitioner, started the altercation by throwing the first punch.  Clearly, the jury found some of that defense persuasive since it acquitted Petitioner of the more serious felony assault charge against Sumlin, Sr.  Whether foregoing such a defense in lieu of a potential mental health defense would have obtained a better result for Petitioner is, at this juncture, sheer speculation.  Counsel made a strategic decision to present the defense that he used, and this Court will not now second-guess counsel's strategic choices.  United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981)(difference in opinion as to trial tactics does not constitute denial of effective assistance); Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984) (tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available).

In short, Petitioner fails to establish either prong of Strickland regarding counsel's failure to investigate the mental health issues.  However, based on the foregoing, a similar conclusion is required for Petitioner's contention that counsel was deficient in not obtaining a confidential psychological expert.   Where the evidence does not warrant it, the failure to call an expert does not amount to ineffective assistance of counsel.  See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).  As discussed above, Petitioner has not established that he advised counsel of his mental health issues;

1    thus, counsel's failure to retain a confidential expert was not deficient representation.  Nor, as stated

2    above, can Petitioner show prejudice, given trial counsel's strategic decision to pursue a defense that

3    Petitioner did not commit the acts for which he was charged.  Accordingly, Petitioner has not

4    established either prong of Strickland as to this aspect of his ineffective assistance claim.

5            Next, Petitioner contends that his attorney was ineffective for failing to investigate and

6    challenge Petitioner's competency to stand trial.  Again, this contention is without merit.

7            A defendant is competent to stand trial if he understands the proceedings and is able to assist

8    his attorney in his own defense.  See Dusky v. United States, 362 U.S. 402 (1960).  Competency to

9    stand trial requires "the mental acuity to see, hear and digest the evidence, and the ability to

10   communicate with counsel in helping to prepare an effective defense."  Odle v. Woodford, 238 F.3d

11   1084, 1089 (9th Cir. 2001)(citing Dusky, 362 U.S. at 402).  Convictions of legally incompetent persons

12   violate due process, and where the evidence raises a bona fide doubt about the defendant's

13   competency, due process requires that a full competency hearing be conducted.  Pate v. Robinson, 383

14   U.S. 375 (1966).  However, such a hearing is not required absent a "substantial" or "bona fide" doubt

15   as to the defendant's competence.  Hernandez v. Ylst, 930 F.2d 714, 716 (9th Cir. 1991).  A habeas

16   petitioner is entitled to such a hearing if he presents sufficient facts to create a real and substantial

17   doubt as to his competency, even if those facts were not presented to the trial court.  Steinsvik v.

18   Vinzant, 640 F.2d 949, 954 (9th Cir. 1981).  Thus, a showing of "either extremely erratic and irrational

19   behavior during the course of the trial" or "lengthy histories of acute psychosis and psychiatric

20   treatment" may suffice to establish incompetency to stand trial.  Boag v. Raines, 769 F.2d 1341, 1343

21   (9th Cir. 1985).

22           Nothing in the transcript of Petitioner's trial even remotely suggests the type of in-trial conduct

23   the Ninth Circuit requires to establish incompetency.  Thus, the only remaining question is whether

24   Petitioner's history of mental problems will suffice to show ineffectiveness.  Petitioner indicates that

25   in 1992 and 1994 he attempted suicide, i.e., twelve to fourteen years before the 2006 trial.  (Doc. 1,

26   Ex. C).  Those circumstances, occurring over a decade prior to trial, do not, by themselves, establish

27   that Petitioner was incompetent to stand trial in 2006.  See Chavez v. United States, 656 F.2d 512, 518

28   (9th Cir. 1981)(psychiatric report indicating incompetence may lose its probative value over time).

Petitioner's contention that he was on medication, i.e., Wellbutrin and Seroquel, during trial is equally unavailing.  (Doc. 1, Ex. A).  As Respondent observes, Exhibit A, while showing that these medications were indeed prescribed, also indicates that the prescription appears to be based on Petitioner's self-reporting of his use medications prior to his incarceration in this case, a claim that jail officials could not verify.  (Doc. 1, Ex. A, pp. 5-6).  Moreover, on the dates documented in Exhibit A, Petitioner does not appear to have been suffering mental issues that were sufficiently debilitating to support a claim of incompetency.  Indeed, the only complaint on those dates was Petitioner's poor sleep on one occasion.  (Id.).  Finally, the trial transcript itself does not suggest in any way that Petitioner was incompetent to stand trial.  As Respondent notes, he not only did not seek a continuance for a mental health evaluation, he diligently safeguarded his speedy trial rights in order to receive a prompt trial.  (LD 19, pp. 19-27; 93-94; 105-106; 117-118).  Such awareness of the proceedings and attentiveness to his legal rights undercuts any claim by Petitioner that he was incompetent to understand the proceedings or assist in his defense.

Based on the foregoing analysis, it necessarily follows that Petitioner's counsel was not ineffective for failing to investigate and raise a claim of incompetency to stand trial, nor has Petitioner established any prejudice by counsel's failure to do so.  Thus, the state court's adjudication was not objectively unreasonable.  Accordingly, the claim should be rejected.

B.   Ineffective Assistance of Counsel (Failure to Object)

Next, Petitioner contends that counsel was ineffective for failing to object to the trial court's finding of due diligence regarding the prosecutor's efforts to locate and make available the victim, Montez Sumlin, Sr., to testify at trial, and to the subsequent reading into evidence of Sumlin, Sr.'s preliminary hearing testimony.  (Doc. 1, pp. 5-12).  As mentioned, since no reasoned decision of the state court is extant, the Court will independently review this issue and conclude, for the following reasons, the claim is without merit.

Shortly before trial, the prosecution informed the court that it would move at trial to introduce Sumlin, Sr.'s preliminary hearing testimony because the prosecution had not been able to either locate the victim or subpoena him to appear at trial.  (LD 13, pp. 6-7; LD 19, pp. 109-110).  On June 5, 2006, the trial court conducted a pre-trial hearing as to whether the prosecution had exercised due diligence

in locating Sumlin, Sr.  (LD 14, pp. 201-215).  Witnesses for the prosecution's office testified that they had attempted to contact Sumlin, Sr. seven times by computer, nine times by telephone, and once by mail, and that they had gone to the addresses of Sumlin, Sr. and his relatives seven times, as well as having checked with various agencies and entities on three occasions between May 5, 2006 and June 5, 2006, without success.  (LD 14, pp. 202-213).  Following the hearing, the trial court ruled as follows:

> The Court finds that there has been a diligent effort to locate Mr. Sumlin.  Those diligent efforts have been unsuccessful, and I—based on the allegations in the Information appear to be a material witness previously examined at the preliminary hearing subject to cross-examination by defense counsel.  The Court will allow the transcript of the preliminary hearing to be used in lieu of his testifying since he is unavailable.

(LD 14, p. 215).

Defense counsel objected to the ruling, indicating to the trial court that, subsequent to the preliminary hearing, he had discovered additional information about the relationship between Sumlin, Sr., and Petitioner, and that the court's ruling would preclude him from cross-examining the victim about those matters.  (LD 14, p. 215).  The court noted the defense objection.  (Id.).  At trial, the preliminary hearing testimony was read into the record.  (LD 15, pp. 225-254).

At the outset, it bears emphasis that Petitioner does not contend that the trial court erred in making its ruling regarding Sumlin, Sr.'s unavailability; rather, Petitioner appears to maintain only that defense counsel should have made a more strenuous objection and should have more successfully urged the court to issue a bench warrant or to require law enforcement to "stake out" Sumlin, Sr.'s address, because "without the testimony of [Sumlin, Sr.] ther[e] would have been no trial."  (Doc. 1, p. 12).  Where, however, Petitioner does not contend that the trial court ruled incorrectly, it is difficult to see how his attorney's failure to object more strenuously to a ruling to which Petitioner himself does could ever rise to the level of ineffective assistance.  See U.S. v. Aguon, 851 F.2d 1158, 1172 (9th Cir. 1988) (no ineffectiveness for failing to make a groundless objection); James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (holding that an attorney's failure to make a futile motion is not ineffective assistance of counsel); Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989) (counsel's failure to raise meritless legal argument does not constitute ineffective assistance of counsel).

Second, Petitioner cannot show prejudice since he cannot show that, even had counsel successfully lobbied the trial court to "stake out" Sumlin, Sr.'s home or to issue a bench warrant, that such efforts would have been fruitful. At the hearing, the prosecution testified to no less than 27 separate instances of attempting to locate the victim without success during the month leading up to trial. (LD 14, pp. 202-214). It appears that the victim did not wish to be located since even his family could not provide information on his whereabouts. Successfully seeking stakeouts or bench warrants would not necessarily have resulted in the victim's attendance at trial if even his family did not know where he was.

Nor has Petitioner shown that, even having secured his presence at trial, the result of the trial would have been more favorable to Petitioner. As Respondent correctly points out, Sumlin, Sr.'s testimony at the preliminary hearing was exhaustive and he was, by defense counsel's own admission, "cross-examined thoroughly." (LD 14, p. 214). In his preliminary hearing testimony, Sumlin, Sr. candidly testified to his previous arguments with Petitioner while under the influence of drugs and the fact that he was extremely upset with Petitioner. (LD 14, pp. 234; 238). Thus, the value or relevance of further cross-examination of Sumlin, Sr. regarding some unspecified aspect of their relationship that counsel discovered after the preliminary hearing is of such dubious value that the Court simply cannot conclude that the victim's absence prejudiced Petitioner.

Accordingly, after independent review of the record, the Court concludes that Petitioner fails both prongs of <u>Strickland</u> and, therefore, his claim should be denied.

C.   <u>Ineffective Assistance of Counsel (Failure to Call Witnesses)</u>

Petitioner next contends that his counsel was ineffective for failing to call Sumlin, Jr. as a witness, to hire a medical forensic expert, and to subpoena Sumlin, Sr.'s medical records. The Court concludes that this claim is also without merit.

1.   <u>The Superior Court's Ruling</u>.

The Superior Court denied Petitioner's claim as follows:

Petitioner takes his counsel to task for failure to call Montez Sumlin Jr. as a witness. Courts will not ordinarily second guess counsel for failure to call witnesses. [Citation.] Petitioner has the burden to show how a witness would change the outcome of the trial. [Citation.] Petitioner offers a declaration of Montez Sumlin Jr., who contends that it is untrue that petitioner had a gun. However, he also states that he was out in the car and with things happening so fast that all he saw was a fist fight between petitioner and his father. Petitioner was acquitted of all charges involving Mr. Montez Sumlin Sr. except displaying a firearm. Mr. Sumlin's

declaration does not directly address whether or not he saw petitioner point a gun at Jeffrey Davis.  Petitioner fails to show prejudice for failure to call Mr. Sumlin Jr.  Furthermore, Mr. Gonzalez was petitioner's counsel at the preliminary hearing.  Although Jeffrey Prince became petitioner's trial counsel, it does not alter our analysis because the only witness petitioner mentions is Mr. Montez Sumlin Jr. who admits in his declaration estrangement from his father, evidencing a hostile motive for Mr. Sumlin Jr.'s testimony.  It appears from the preliminary hearing transcript that petitioner was manipulated by April Sumlin to involve himself in a fight that was not his.  In fact, April Sumlin yelled at petitioner to get back into the car after the fight.  Nevertheless, the defense called her as a witness.  Petitioner fails to show a prima facie case for relief under habeas corpus.

(LD 6, p. 4).

       2.   <u>Analysis</u>.

Regarding defense counsel's failure to call Sumlin, Jr., as a witness, the Superior Court identified <u>Strickland</u> as the proper test and focused on a lack of prejudice in rejecting the claim.  Thus, the only remaining question is whether the state court's adjudication was objectively reasonable.  It was.

The Superior Court began by noting discrepancies in the declaration of Sumlin, Jr., i.e., that Petitioner did not have a gun, but events were happening so quickly that all he saw was a fist fight.  The state court then noted that Petitioner had been acquitted of felony assault on Sumlin, Sr., thus indicating that the jury did not believe Petitioner had struck the victim with a weapon, a fact consistent with Sumlin, Jr.'s account.

More tellingly, however, Sumlin, Jr., indicated that he did not see the victim, Davis, at the scene at all, yet the jury convicted Petitioner of felony assault on Davis with a firearm and misdemeanor brandishing of a firearm as to Sumlin, Sr., and found true the gun enhancement.  From those verdicts, it is clear that the jury found that the victim Davis and a weapon were both present at the crime scene at the same time.  Since Sumlin, Jr., indicated he saw neither Davis nor a weapon, his testimony would not have been consequential to the jury's ultimate verdict on this issue.  Moreover, April Sumlin had already testified at trial that she saw no gun at any time, thus making Sumlin, Jr.'s post-trial declaration to the same effect merely cumulative.  The failure to offer cumulative exculpatory evidence is not prejudicial.  <u>See United States v. Schaflander</u>, 743 F.2d 714, 719 (9th Cir. 1984).

15

1    From the foregoing, it is patent that Petitioner has failed to establish either prong of <u>Strickland</u>.

2    Accordingly, the Superior Court's ruling on this matter was not objectively unreasonable.

3    Turning to the remaining aspects of this ineffectiveness claim, i.e., that counsel should have

4    called a medical forensic expert and subpoenaed Sumlin, Sr.'s medical records, in the absence of any

5    reasoned state court decision, the Court will, as mentioned previously, conduct an independent review

6    of these claims.  In so doing, the Court finds that they lack merit.

7    The basis for this claim is Petitioner's contention that, had a medical expert testified in his

8    behalf and had Sumlin, Sr.'s medical records been made available, such evidence would have rebutted

9    the charge that Sumlin, Sr.'s head wound, that required staples to close, was the result of being hit by

10   Petitioner's weapon rather than through inadvertently hitting his head on the door.  (Doc. 1, pp. 15-

11   16).  What Petitioner fails to grasp is that he was not convicted for assaulting Sumlin, Sr. with a

12   firearm, but only for simple assault, a charge that was amply supported by the evidence that Petitioner

13   punched Sumlin, Sr. with his fist without any need for evidence of a serious head injury that required

14   staples to close.  Thus, even had defense counsel called a medical expert and subpoenaed the victim's

15   medical records, it could not have resulted in a more favorable outcome.  Hence, Petitioner fails to

16   establish any prejudice, even assuming, arguendo, that counsel's conduct was ineffective.

17   As to counsel's ineffectiveness, Petitioner has failed entirely to identify any expert that his

18   counsel should have called as a witness, and, even had he identified such a potential witness, he has

19   failed to show what that medical expert might have testified about, whether such testimony would

20   have been exculpatory, whether, in Sumlin, Sr.'s absence and without his permission, the defense

21   could have obtained Sumlin, Sr.'s medical records, and whether those medical records, even if

22   obtained, would have helped the defense.  Petitioner cannot simply casually charge ineffectiveness

23   based on nothing more than surmise and conjecture.  He has an obligation to provide the reviewing

24   court with some basis for concluding that counsel's conduct was defective.  In this instance, he has

25   failed to do so.  Accordingly, upon independent review, the claim should be rejected.

26   D.  <u>Reasonable Doubt Instruction</u>

27   Next, Petitioner contends that CALCRIM Nos. 220 and 222 violated his right to a fair trial in

28   that they instructed jurors to consider evidence presented in court, but not to consider the absence of

16

evidence in court or the arguments of counsel.  (Addendum ("Add."), p. 19).  This contention is

without merit.

      1.   The 5th DCA's Opinion.

The 5th DCA rejected Petitioner argument as follows:

Washington claims the trial court's instructing the jury in the language of CALCRIM No. 220, in combination with CALCRIM No. 222 and its admonition to the jury before closing arguments that "what the attorneys say is not evidence. You have all of the evidence from which you'll make your decision," violated his federal due process right to have his guilt determined beyond a reasonable doubt. We disagree.

The due process clause of the Fourteenth Amendment protects a defendant against conviction except on proof beyond a reasonable doubt. (In re Winship (1970) 397 U.S. 358, 361-362.) The federal constitution does not require jury instructions to contain any particular language, but they must convey both that the accused is presumed innocent until proved guilty and that the accused may be convicted only upon proof beyond a reasonable doubt. (Victor v. Nebraska (1994) 511 U.S. 1, 5.) When reviewing the correctness of instructions on reasonable doubt, the proper constitutional inquiry is whether there is a reasonable likelihood that the jury has applied the instructions in a way that violates the Constitution. (People v. Frye (1998) 18 Cal.4th 894, 957.) A single instruction must not be judged in isolation but rather in context of all the other instructions given the jury. (Ibid.)

CALCRIM No. 220, as read to the jury in this case, states in pertinent part: "Deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all *the evidence that was received throughout the entire trial*. [¶] Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." (Italics added.) In the instant case, after instructing the jury with CALCRIM No. 220, the court gave CALCRIM No. 222, which states that the jury "must use only the evidence that was presented in this courtroom," and defines "evidence" as the "sworn testimony of witnesses and exhibits admitted into evidence, stipulation between the parties and anything else I told you to consider as evidence."

Washington contends that, when these two instructions are read together with the court's instruction to the jury before closing statements were given that "what the attorneys say is not evidence. You have all of the evidence from which you'll make your decision," they limited the jury's determination of reasonable doubt to the evidence received at trial. Washington reasons that jurors may have been misled into believing they were precluded from considering the absence of evidence connecting him to the crimes in determining whether reasonable doubt existed, resulting in a lessening of the prosecution's burden of proof and impinging on Washington's right to present a defense. Washington acknowledges his attorney argued the absence of evidence to the jury, but says CALCRIM No. 220 does not support the argument and jurors are presumed to follow instructions. Washington asserts that because the error is structural, reversal is required.

As Washington acknowledges in his reply brief, three recent appellate decisions, two from this court, have disagreed with his interpretation of CALCRIM No. 220. (People v. Flores (2007) 153 Cal.App.4th 1088 (Flores ); People v. Westbrooks (2007) 151 Cal.App.4th 1500 (Westbrooks ); People v. Rios (2007) 151 Cal .App.4th 1154 (Rios ).)

In Rios, we rejected the argument that CALCRIM No. 220, read together with CALCRIM No. 222, impermissibly shifted the burden of proof to the defense by allowing the jury to hold against the defense the absence of defense evidence. (Rios, supra, 151 Cal.App.4th at pp. 1156-1157.) We noted that CALCRIM No. 220 imparted essentially the same mandate to the jury as CALJIC No. 2.90, as to which the United States Supreme Court had rejected a similar

17

constitutional challenge. (<u>Rios</u>, <u>supra</u>, at p. 1157, citing <u>Victor v. Nebraska</u>, <u>supra</u>, 511 U.S. at p. 16.) As we explained in Rios, "CALCRIM [No.] 220 uses verbs requiring the jury [to] 'compare and consider all the evidence that was received throughout the entire trial.' CALJIC No. 2.90 uses nouns requiring 'the entire comparison and consideration of the all the evidence' by the jury." (<u>Rios</u>, <u>supra</u>, at p. 1157.)

In <u>Flores</u>, we analyzed the language at issue in CALCRIM No. 220, read together with CALCRIM No. 222, and confirmed that "[n]othing about the instructions given implies to the jury that the defendant must adduce evidence that promotes reasonable doubt or that the defendant must persuade the jury of his or her innocence by evidence presented at trial." (<u>Flores</u>, <u>supra</u>, 153 Cal.App.4th at p. 1093.)

Finally, in <u>Westbrooks</u>, Division One of the Fourth District rejected the contention that CALCRIM No. 220 prohibited the jury from considering the lack of physical evidence implicating the defendant in the crime in determining his guilt. The court held CALCRIM No. 220 "merely instructs the jury that it must consider only the evidence presented at trial in determining whether the People have met their burden of proof. In other words, this instruction informs the jury that the People may not meet their burden of proof based on evidence other than that offered at trial." (<u>Westbrooks</u>, <u>supra</u>, 151 Cal.App.4th at p. 1509.) The court determined it would not have been reasonable for the jury to interpret CALCRIM No. 220 as stating the jury was precluded from considering any perceived lack of evidence in determining the accused's guilt. (<u>Westbrooks</u>, <u>supra</u>, at p. 1510.)

We see no reason to depart from our analysis in <u>Rios</u> and <u>Flores</u> or the analysis in <u>Westbrooks</u>, and therefore conclude that because there is no reasonable likelihood the jury understood CALCRIM Nos. 220 and 222 in the manner Washington suggests, the trial court did not err in giving these instructions to the jury.

(LD 4, pp. 3-5).

       2.  <u>Analysis</u>.

In determining whether instructional error warrants habeas relief, a habeas court must consider "'"whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977) (<i>quoting</i> <u>Cupp v. Naughten</u>, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973)); <u>California v. Roy</u>, 519 U.S. 2, 5, 117 S.Ct. 337, 338 (1996) (challenge in habeas to the trial court's jury instructions is reviewed under the standard in <u>Brecht v. Abrahamson</u>, 507 U.S. at 637--whether the error had a substantial and injurious effect or influence in determining the jury's verdict.).

In a criminal case, an evidentiary device must not undermine the fact-finder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. <u>County Court of Ulster County, N. Y. v. Allen,</u> 442 U.S. 140, 156, 99 S.Ct. 2213, 2224 (1979); <u>In re Winship</u>, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970).  A permissive inference is one of the most common

evidentiary devices, which allows, but does not require, the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. Ulster, 442 U.S. at 157, 99 S.Ct. at 2224. "Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." Id., 442 U.S. at 157, 99 S.Ct. at 2225; U.S. v. Warren, 25 F.3d 890, 897 (9th Cir. 1994); Sterling v. Roe, 2002 WL 826807 (N.D. Cal. 2002). "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." Francis v. Franklin, 471 U.S. 307, 314-315 (1985).

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970). The United States Supreme Court has held that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239 (1994). This standard reduces the chance that an innocent person will be conviction. In re Winship, 397 U.S. at 362. Winship does not require that every single fact upon which the jury relies be proven to a reasonable doubt. Many facts not proven to that standard may, collectively, allow the jury to infer that an element of the crime is proven beyond a reasonable doubt. To enforce Winship's rule, judges must instruct juries that they cannot return a guilty verdict unless the government has met this burden. Cool v. United States, 409 U.S. 275, 278 (1972). A jury conviction based upon an impermissibly low quantum of proof violates the jury trial guarantee of the Sixth Amendment. Sullivan v. Louisiana, 508 U.S. 275, 278 (1993). A judge can violate a defendant's rights by giving an instruction that undercuts the force of an otherwise proper beyond-a-reasonable-doubt instruction. See, e.g., Cool, 409 U.S. at 102-103; Sandstrom v. Montana, 442 U.S. 510, 521 (1979).

When a jury instruction is susceptible to a reading that would render the verdict unconstitutional and another that would generate a proper verdict, the reviewing court considers the challenged instruction in light of the full jury charge and in the context of the entire trial. See Naughten, 414 U.S. at 145-147(consider charge as whole); United States v. Park, 421 U.S. 658, 675 (1975)(consider context of whole trial). The court must then decide whether there is a reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner. Estelle, 502 U.S. at 72. A verdict remains valid if a jury instruction only tangentially undercut a proper beyond-a-reasonable-doubt instruction. Naughten, 414 U.S. at 149-150.

Here, the jury was instructed with revised version of CALCRIM No. 220 as follows:

> The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.
>
> A defendant in a criminal trial is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.
>
> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.
>
> In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

(Clerk's Transcript on Appeal ("CT") 187). The jury was also instructed with CALCRIM No. 222, which state, in pertinent part, as follows:

> You must decide what the facts are in this case. You must use only the evidence that was presented in this courtroom. "Evidence" is the sworn testimony of witnesses, the exhibits admitted into evidence, stipulations between the parties, and anything else I told you to consider as evidence.
>
> Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witnesses' answers are evidence. The attorneys' questions are significant only if they helped you to understand the witnesses' answers. Do not assume that something is true just because one of the attorneys asked a question that suggested it was true.

(CT 188).

20

1    The 5th DCA applied the correct federal standard to this issue.  Petitioner argues that the

2    instructions' admonitions that the jurors must use the evidenced received throughout the trial and that

3    they must use only the evidence presented in the courtroom had the effect of limiting the definition of

4    "reasonable doubt" by precluding the jurors from considering an absence of evidence of guilt, not just

5    affirmative evidence of guilt.  This contention, however, is unsupported by the instructions when read

6    as a whole.  As the 5th DCA observed, the instructions merely advise the jury that it may not consider

7    evidence that was not presented at trial, e.g., evidence gleaned from media or newspapers, or

8    discovered through some other source.  Nothing in the instructions suggests, even remotely, that jurors

9    could not consider the lack of evidence as to a particular element of a charged offense.  Moreover,

10    Petitioner does not cite to any particular element of any charge that would have been especially

11    susceptible to such a construction, even were it reasonable inferable from the jury charge as a whole.

12    Nor has Petitioner referenced any United States Supreme Court authority, and this Court is aware of

13    none, that requires that jurors be expressly instructed on the lack of evidence vis-à-vis reasonable

14    doubt.  Hence, the state court adjudication was not objectively unreasonable.

15    E.  CALCRIM No. 1300

16    In this claim, Petitioner argues that the trial court, in instructing on CALCRIM No. 1300,

17    erroneous omitted the phrase "specific intent."  (Add., p. 28).  This claim lacks merit.

18    1.  The 5th DCA's Decision.

19    The 5th DCA rejected Petitioner's argument in the following analysis:

20    The instruction on the crime of making criminal threats, CALCRIM No. 1300, includes as an
element that "[t]he defendant intended that his statement be understood as a threat." As

21    Washington points out, this language fails to state "that the defendant must have specifically
intended that his statement be understood as a threat." Section 422 defines the crime of making

22    criminal threats as follows: "Any person who willfully threatens to commit a crime which will
result in death or great bodily injury to another person, with the specific intent that the

23    statement ... is to be taken as a threat ... shall be punished...." Relying on section 422,
Washington argues the omission of the word "specifically" in front of the word "intended" in

24    the instruction removed the specific intent element from the offense and risked the jury using a
general intent to support a conviction.

25    Washington's argument is based on a faulty understanding of the nature of general and specific

26    intent. General intent exists where the defendant intentionally does some act or fails to do some
act, while specific intent exists where, in doing or failing to do the act, the defendant intends a

27    particular result. (People v. Rubalcava (2000) 23 Cal.4th 322, 328.) For example, under the
criminal threats statute, the defendant must "willfully threaten[ ] to commit a crime which will

28    result in death or great bodily injury to another person." (§ 422.) This is a general intent to
make a qualifying threat. The crime, however, also requires a specific intent "that the statement

... is to be taken as a threat." (Ibid.) In other words, in addition to intending to make the statement, the defendant must intend that the statement be taken as a threat.

As the guide for using the CALCRIM instructions explains: "The instructions do not use the terms general and specific intent because while these terms are very familiar to judges and lawyers, they are novel and often confusing to many jurors. Instead, if the defendant must specifically intend to commit an act, the particular intent required is expressed without using the term of art 'specific intent.' Instructions 250-254 provide jurors with additional guidance on specific vs. general intent crimes and the union of act and intent." (Judicial Council of California Criminal Jury Instructions (2007-2008) p. xxvi.) Consistent with this explanation, CALCRIM No. 1300 does not include the term "specific" or "specifically." As given here, CALCRIM No. 1300 listed the elements of the crime as follows: "The defendant is charged in Count 3 with having made a criminal threat. To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Mr. Davis; two, the defendant made the threat to Mr. Davis orally; three, the defendant intended that his statement be understood as a threat and intended it to be communicated to Mr. Davis; four, the threat was so clear, immediate, unconditional and specific that it communicated to Mr. Davis a serious intention and the immediate prospect that the threat would be carried out; five, the threat actually caused Mr. Davis to be in sustained fear for his own safety; and, six, Mr. Davis' fear was reasonable under the circumstances."

The first element in this list requires a general intent to make a threat of death or great bodily injury. The third element requires a specific intent that the threat be taken as such by the recipient. Thus, in order to find defendant guilty of this crime, the jury was required to find Washington made a threat and did so with the intent that his statement be understood as a threat. Moreover, the jurors were instructed with CALCRIM No. 252, in pertinent part, as follows: "The following crimes require specific intent and those are Counts 2 and 3, crimes of burglary and threats of great bodily harm. [¶] To be guilty of these offenses a person must not only intentionally commit the prohibited act or intentionally fail to do the required act but must do so with the specific intent. [¶] The act and intent required are explained in the instruction for each crime or allegation." Thus, the jurors were informed that in order to find Washington guilty on count 3, they had to find he committed the prohibited act, i.e. making a threat of death or great bodily injury, with the specific intent, i.e. Washington intended his statement be understood as a threat. Given these instructions, it would have added nothing to insert the word "specific" into the third element of the CALCRIM No. 1300 instruction.

Washington asserts, however, that in this case the jurors could not correlate CALCRIM No. 252's specific intent language with the elements of CALCRIM No. 1300 because the crime was named differently in each instruction and on the verdict form. We disagree. The trial court instructed jurors pursuant to CALCRIM No. 252 that the crime listed in count 3, "threats of great bodily harm," required specific intent. The CALCRIM No. 1300 instruction given began with the statement that Washington "is charged in Count 3 with having made a criminal threat." The verdict form contains a heading "Third Count" and under that states the jury finds Washington guilty of the felony "Threaten with Intent to Terrorize Another Person, to wit: Jeffrey Davis, in violation of Section 422 of the Penal Code, as charged in the third count of the Information." Although the two instructions and the verdict form each give the crime a different name, it is clear that all of them pertain to count three, which is the only charge containing language remotely related to "threats." We fail to see how the different titles given the crime would cause the jury to be unable to correlate CALCRIM No. 252 with CALCRIM No. 1300. Accordingly, as the People point out, there is no reason to depart from the presumption on appeal that the jury understood and followed the instructions. (People v. Delgado (1993) 5 Cal.4th 312, 331.)

(LD 4, pp. 6-8).

2. <u>Analysis</u>.

Respondent argues that Petitioner has failed to present a cognizable federal habeas claim because the issue was raised solely as a question of state law and the state court adjudicated it solely as a question of state law.  (Doc. 34, p. 8).  The Court agrees.

Federal habeas review of alleged state instructional error is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991); <u>see</u> 28 U.S.C. § 2241; <u>see also Rose v. Hodges</u>, 423 U.S. 19, 21 (1975).  "[F]ederal habeas corpus relief does not lie for errors of state law." <u>Estelle</u>, 502 U.S. at 67 (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle</u>, 502 U.S. at 67-68.  Claims of error in state jury instructions are generally a matter of state law and do not invoke a constitutional question unless they amount to a deprivation of due process. <u>Cooks v. Spaulding</u>, 660 F.2d 738 (9th Cir. 1981) (per curium).

The fact that a jury instruction was incorrect under state law is not a basis for habeas relief. <u>Estelle</u>, 502 U.S. at 68.  Rather, a habeas court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977) (*quoting* <u>Cupp v. Naughten</u>, 414 U.S. 141, 146-47, 94 S.Ct. 396 (1973)); <u>California v. Roy</u>, 519 U.S. 2, 5, 117 S.Ct. 337, 338 (1996) (challenge in habeas to the trial court's jury instructions is reviewed under the standard in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993)--whether the error had a substantial and injurious effect or influence in determining the jury's verdict.).

Here, Petitioner's claim is presented solely as a question of state law.  (Doc. 10, Add., pp. 20-24). Petitioner argues that the instruction did not explain that, to convict Petitioner of making a criminal threat, the jurors must find that he had the specific intent that his statements be understood as a threat.  (Doc. 10, p. 20).  Petitioner argues that CALCRIM 1300 failed to do this, citing several California appellate decisions in support of his position.  The 5th DCA's decision is based entirely on state law.  As mentioned, questions of state law do not invoke federal habeas review. <u>Estelle</u>, 502 U.S.

at 67-68.  Moreover, even were habeas jurisdiction to be applicable to this claim, the 5th DCA

patiently explained that both the instruction itself, and the more general charges, while on occasion

eschewing the legalese of "specific intent," nevertheless adequately explained to jurors that they could

not find Petitioner guilty of making criminal threats without also finding that he intended his words to

be taken as a threat.  Other than positing a hypothetical, Petitioner provides no substantive explanation

for how the challenged instruction "so infected the entire trial that the resulting conviction violates due

process."  Henderson v. Kibbe, 431 U.S. at 154. Accordingly, the state court adjudication was not

objectively unreasonable.

## F.  CALCRIM No. 224

Petitioner next contends that the use of CALCRIM No. 224, which uses the term "innocent,"

violated due process because it required the jury to determine Petitioner's innocence when, Petitioner

contends, the "constitutionally correct terminology requires only that the jury determine if the

defendant is guilty or not guilty…." (Add., p. 31).  This contention should be rejected.

### 1.  The 5th DCA's Decision.

The 5th DCA rejected Petitioner's claim as follows:

> The court instructed the jury with CALCRIM No. 224, which told the jury: "If you can draw two or more reasonable conclusions from the circumstantial evidence, one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence." Washington argues this CALCRIM language lowered the prosecution's standard of proof by allowing the jury to find guilt if they believed Washington is "not innocent."
>
> Washington relies on People v. Han (2000) 78 Cal.App.4th 797 (Han), in which Division Three of the Fourth District found fault with similar language in CALJIC No. 2.01, the predecessor to CALCRIM No. 224. The appellate court criticized as "inapt" and "potentially misleading" the use of term "innocence" rather than "a lack of finding of guilt" in the instruction, but it concluded any such error was harmless "because the other standard instructions make the law on the point clear enough." (Han, at p. 809.)
>
> Han's rationale is not persuasive and has been rejected both by this court in People v. Ibarra (2007) 156 Cal.App.4th 1174, and the Third District in People v. Anderson (2007) 152 Cal.App.4th 919 (Anderson ). As the Anderson court explained: "We cannot agree with the Han court's criticism of CALJIC No. 2 .01. For a defendant to be found not guilty, it is not necessary that the evidence as a whole prove his innocence, only that the evidence as a whole fails to prove his guilt beyond a reasonable doubt. In other words, a not guilty verdict is based on the insufficiency of the evidence of guilt." (Anderson, supra, 152 Cal.App.4th at p. 932.) Earlier in its opinion, the Anderson court explained: "CALCRIM No. 224 does not set out basic reasonable doubt and burden of proof principles; these are described elsewhere. Although the instruction reiterates that each fact necessary for conviction must be proved beyond a reasonable doubt, the obvious purpose of the instruction is to limit the use of circumstantial evidence in establishing such proof. It cautions the jury not to rely on circumstantial evidence to find the defendant guilty unless the only reasonable conclusion to be drawn from it points to the defendant's guilt." (Anderson, supra, at p. 931.) Contrary to Washington's contention,

1    CALCRIM No. 224 does not undermine the prosecution's burden of proof and the court did not
2    err in giving it.

3  (LD 4, pp. 8-9).

4         2.   Analysis.

5    The jury was instructed with CALCRIM 224 as follows:

6    Before you may rely on circumstantial evidence to conclude that a fact necessary to find the
     defendant guilty has been proved, you must be convinced that the People have proved each fact
7    essential to that conclusion beyond a reasonable doubt.

8    Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be
     convinced that the only reasonable conclusion supported by the circumstantial evidence is that
9    the defendant is guilty.  If you can draw two or more reasonable conclusions from the
     circumstantial evidence, and one of those reasonable conclusions points to innocence and
10   another to guilt, you must accept that one that points to innocence.  However, when
     considering circumstantial evidence, you must accept only reasonable conclusions and reject
11   any that are unreasonable.

12  (CT 191).

13       Petitioner's assertion that the one reference to "innocence" in the last paragraph of this

14  instruction would have misled the jury to believe that it needed to find him "innocent" rather than

15  merely "not guilty," borders on the specious.  As the 5th DCA pointed out, CALCRIM 224 does not

16  directly address or define "reasonable doubt" or the prosecution's burden; rather, those terms are

17  defined in other instructions that were given to the jurors.  The state court notes that the "obvious

18  purpose" of the instruction is "to limit the use of circumstantial evidence" in meeting the prosecution's

19  burden of proof, i.e., it "cautions the jury not to rely on circumstantial evidence to find the defendant

20  guilty unless the only reasonable conclusion to be drawn from it points to the defendant's guilt."  In

21  the Court's view, this is both a fair and reasonable construction of the challenged instruction, and the

22  state court's rejection of Petitioner claim is objectively reasonable.  However, even were the

23  instruction error, Petitioner has failed to show how it "so infected the entire trial" that it amounts to a

24  due process instruction, especially considering the instructions as a whole.  Thus, this claim should

25  also be denied.

26       G.   Imposition of the Upper Term Was Not A Sixth Amendment Violation

27       Next, Petitioner argues that his upper term sentences violated his Sixth and Fourteen

28  amendment rights to a jury trial and due process.  (Add., p. 34).  Again, this claim is without merit.

1.   The 5th DCA's Opinion.

The state appellate court denied Petitioner's claim with the following analysis:

Washington argues the imposition of the aggravated terms of nine years on the count 4 assault with a semiautomatic firearm conviction and ten years on the section 12022.5, subdivision (a) firearm enhancement violated his federal constitutional rights to trial by jury and proof beyond a reasonable doubt.

At the sentencing hearing, the court denied Washington's request to strike his prior strike convictions and found, inter alia, as recommended by the probation officer, a circumstance in aggravation his prior convictions as an adult and sustained petitions in juvenile delinquency proceedings were numerous, found no circumstances in mitigation, and imposed a sentence of 32 years to life plus a determinate term of 23 years, which included aggravated terms of nine years for the assault conviction and 10 years for the personal use of a firearm enhancement. (§§ 245, subd. (b), 667, subds. (a), (e)(2)(A)(iii), 667.5, subd.(b), 1170.1, subd. (c)(2)(A)(iii), 12022.5, subd.(a); Cal. Rules of Court, rule 4.421(b)(2).)

Before imposing the sentence, the court considered Washington's criminal record, which the probation report documented as including three 1986 strike convictions (two for first degree burglary and one for assault with a deadly weapon, a hammer and a hatchet, on the victim of one burglary (§§ 245, subd. (a)(1), 459), a 1991 conviction for possession of cocaine base for sale (Health & Saf.Code, § 11351.5), a 1995 conviction for possession of cocaine (Health & Saf.Code, § 11350), and a 2000 conviction for first degree burglary (§ 460, subd. (b).) The probation report also documented misdemeanor priors in 1988 for vandalism and assault (§§ 594, subd. (b)(2), 240), 1988 for burglary (§ 460), 1993 for willful infliction of corporal injury on a spouse (§ 273.5, subd. (a)), 1994 for battery and willful infliction of corporal injury on a spouse (§§ 243, subd. (a), 273.5, subd. (a)), and 2006 for possession of drug paraphernalia (Health & Saf.Code, § 11364).

"*Except for a prior conviction*, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (<u>Cunningham v. California</u> (2007) 549 U.S. ----, ---- [166 L.Ed.2d 856, 873; 127 S.Ct. at 856, 868] (<u>Cunningham</u> ), quoting <u>Apprendi v. New Jersey</u> (2000) 530 U.S. 466, 490 (<u>Apprendi</u> ) (italics added).) "The United States Supreme Court consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction. (<u>Cunningham, supra</u>, [549] U.S. at p. ----, [166 L.Ed.2d at p. 873] 127 S.Ct. at p. 868; <u>Blakely [v. Washington</u> (2004) ] 542 U.S. [296,] 301; <u>Apprendi, supra</u>, 530 U .S. at p. 490; <u>Almendarez-Torres v. United States</u> (1998) 523 U.S. 224[ ] (<u>Almendarez-Torres</u> )." (<u>People v. Black</u> (2007) 41 Cal.4th 799, 818 (<u>Black II</u>).) " '[R]ecidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.' (<u>Almendarez-Torres, supra</u>, at p. 243.)" (Black II, supra, 41 Cal.4th at p. 818.)

In short, the "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as *one legally sufficient aggravating circumstance* has been found to exist by the jury, has been admitted by the defendant, or *is justified based upon the defendant's record of prior convictions*." (<u>Black II, supra</u>, 41 Cal.4th at p. 816; italics added.) Washington's record of prior convictions justified the court's imposition of the aggravated term. Error, if any, in the court's use of pre-Cunningham verbiage from the rules of court about his engaging in violent conduct which indicates a serious danger to society as demonstrated by his prior convictions, that he was on parole when the crime was committed, and his poor performance on parole, rather than post-<u>Cunningham</u> verbiage specifically about his record of prior convictions, was harmless beyond a reasonable doubt. (See People v. Sandoval (2007) 41 Cal.4th 825, 838-839.)

Washington recognizes we are bound by <u>Black II</u>, but argues it is wrongly decided and distinguishable from this case because the trial court cited his prior juvenile history as well as

his prior adult convictions when it imposed the aggravated terms. Washington contends the recidivism exception does not apply to prior juvenile adjudications, citing United States v. Tighe (9th Cir.2001) 266 F.3d 1187. The issue of whether a juvenile adjudication cannot qualify as a prior strike under federal constitutional law has been considered and rejected by numerous appellate courts in California, including this court (People v. Buchanan (2006) 143 Cal.App.4th 139, 141; People v. Superior Court (Andrades ) (2003) 113 Cal .App.4th 817, 830-834; People v. Lee (2003) 111 Cal.App.4th 1310, 1311, 1313-1316; People v. Smith (2003) 110 Cal.App.4th 1072, 1075, 1077-1078; People v. Bowden (2002) 102 Cal.App.4th 387, 390-394; cf. People v. Palmer (2006) 142 Cal.App.4th 724), and is pending before the California Supreme Court in People v. Nguyen, review granted July 30, 2007, S154847.

Even if it was impermissible for the trial court to consider Washington's juvenile history, however, Washington's numerous prior convictions as an adult were sufficient to support the "numerous and of increasing seriousness" factor without resort to his juvenile history and were adequate to render him eligible for the upper term. Accordingly, the trial court's reliance on the additional facts of his juvenile adjudications to impose the aggravated terms does not render their imposition unconstitutional. (See Black II, supra, 41 Cal.4th at p. 816.)

(LD 4, pp. 9-12).

      2.  Analysis.

As explained above, in rejecting Petitioner's claim, the Court of Appeal found that imposition of the upper term was permissible as it was partly based on Petitioner's prior convictions.  (LD 4, pp. 9-12.)  While the imposition of an upper term based on aggravating factors not found by the jury generally violates the Sixth Amendment, the Supreme Court has retained an exception for findings of a defendant's prior convictions.  Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 868, 166 L.Ed.2d 856 (2007); Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  Further, "under California law, only one aggravating factor is necessary to set the upper term as the maximum sentence."  Butler v. Curry, 528 F.3d 624, 643 (9th Cir.2008).  The fact that the court may have also considered other factors not falling within the prior conviction exception does not affect the analysis. See id. at 648-49 ("[T]he relevant question [regarding a Sixth Amendment sentencing violation] is not what the trial court would have done, but what it legally could have done. After one aggravating factor was validly found, the trial court legally could have imposed the upper term sentence. That the judge might not have done so in the absence of an additional factor does not implicate the Sixth Amendment, as that consideration concerns only the imposition of a sentence within an authorized statutory range.").  For that reason, if at least one of the aggravating factors on which the judge relied in sentencing was established in a manner consistent with the Sixth Amendment, the sentence does not violate the Constitution. Id.

Here, the state court applied the correct federal standard, referring to <u>Cunningham</u> and <u>Apprendi</u>.  Since the state court, in imposing Petitioner's sentence, relied at least in part upon the fact of Petitioner's prior convictions, it necessarily follows that the sentence is not susceptible to a Sixth Amendment challenge; hence, the state court's adjudication was neither contrary to nor an unreasonable application of the correct federal standard.

### H.  <u>Sufficiency of the Evidence For Prior Conviction</u>

Finally, Petitioner contends that insufficient evidence was presented to prove one of his prior prison term allegations.  (Doc. 10, Add., p. 44).  This claim must be denied for a host of reasons.

### 1.  <u>The 5th DCA's Opinion</u>.

The state court rejected Petitioner claim on the following basis:

Washington contends there was insufficient evidence to prove one of the section 667.5, subdivision (b), prior prison term allegations. We disagree.

One of the prior prison term allegations under section 667.5, subdivision (b) was that Washington "was on or about December 6, 1999" convicted in Kern Superior Court case number 59136 of "the crime of Health and Safety Code section 11350, a felony." At the court trial on the prior conviction allegations, Washington's section 969, subdivision (b) packet of prior convictions and incarcerations was admitted into evidence. In reciting the convictions reflected in the packet's contents, the prosecutor explained that Washington was "convicted and sentenced again in 1995, Case Number 59136. Initially given life but that was reduced to six years from an appeal. Convicted and sentenced again in Case Number 77973, violation of Penal Code 460(b). Given six years on July 8th, 2000."

The packet contains an abstract of judgment reflecting that on December 13, 1994, Washington had been convicted in Kern Superior Court case number SC 59136 A of possession of a narcotic substance under Health & Safety Code section 11350, subdivision (a), and sentenced on February 3, 1995, to 25 years to life pursuant to the three strikes law. The abstract has a diagonal line drawn through it, over which is written "amended 12-6-99." The Department of Corrections and Rehabilitation's Chronological History states that an amended abstract of judgment was received on December 6, 1999, after a writ of habeas corpus granting reduction in term from a three strike term of 25 years to a two strike term of six years. The packet also contains an abstract of judgment reflecting that on May 19, 2000, Washington was convicted in Kern Superior Court case number SC079973A of larceny (section 460, subdivision (b)), and sentenced on July 6, 2000, to a total prison term of six years.

Defense counsel had the opportunity to review the packet and actually challenged a portion of it that is not relevant to this issue. At the conclusion of the trial on the prior prison term allegations, the court found true that "on or about December 13, 1999, in the Superior Court of the State of California and County of Kern in Case No. 59136A, the Defendant was convicted of a violation of Health and Safety Code section 11350, a felony ... and that he had then served a separate term in state prison for one year or more and did not remain free of prison custody for and did commit an offense resulting in a felony conviction during the period of five years subsequent to the conclusion of that term, within the meaning of Penal Code section 667.5(b)."

Washington notes it is the prosecutor's burden to prove a charged sentence enhancement beyond a reasonable doubt, citing <u>People v. Tenner</u> (1993) 6 Cal.4th 559, 566, in which the court stated that "[d]ue process requires the prosecution to shoulder the burden of proving each

element of a sentence enhancement beyond a reasonable doubt." Washington asserts there was insufficient evidence to prove the information's allegation that he was convicted on or about December 6, 1999 in Kern Superior Court case number 59136 of a violation of Health and Safety Code section 11350, or to support the court's finding that he was convicted on December 13, 1999 in the same case number of a violation of the same section, because the packet does not contain an abstract of judgment which shows a "1999 Kern County Case Number 59136 Health and Safety Code section 11350 felony conviction in 1999. Rather, it shows that such a conviction took place in 1995." From this, Washington argues there was "no substantial evidence from which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt of the charged 1999 prior conviction. Mr. Washington was never charged with the 1995 prison prior that the trial found 'true.' Nor was such a 1995 prison prior ever admitted by [Washington] or proved by the prosecution." Washington concludes that under section 667.5, subdivision (d), and the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, the true finding regarding this prior conviction allegation must be reversed and the additional one-year sentence based on it stricken.

While Washington is correct that the prosecution must plead and prove his prior convictions, it does not follow that an error in pleading the date of conviction is tantamount to a failure of proof on that issue. The issue presented more properly is characterized as a variance between pleading and proof, between a fact alleged and a fact proven in support of the prior conviction, rather than a failure to prove the conviction. Addressing the issue in that context, we reject it because Washington forfeited it and he has not shown it affected his substantial rights.

Importantly, Washington did not challenge in the trial court his notice and opportunity to defend against the allegations, and did not object below to the variance in the information's allegations and the proof at trial. He has thus forfeited the issue for appeal. (Colbert v. Colbert (1946) 28 Cal.2d 276, 281.) "[A] variance may be disregarded where the action has been as fully and fairly tried on the merits as though the variance had not existed." (Hayes v. Richfield Oil Corp. (1952) 38 Cal.2d 375, 382.)

Washington's argument also fails because he has not shown the discrepancy between the accusatory pleading and the proof was material, i.e., it misled him in preparing his defense. "Under the generally accepted rule in criminal law a variance is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense, or is likely to place him in second jeopardy for the same offense." (People v. Williams (1945) 27 Cal.2d 220, 226; see also In re Michael D. (2002) 100 Cal.App.4th 115, 127-128.) This is in keeping with section 960, which provides that "no accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." As Washington never has claimed the information failed to adequately notify him of the charges against him, that he was misled in preparing his defense or placed in second jeopardy for the same offense, the mere fact the evidence did not match the information's allegations does not compel reversal. (Accord, In re Michael D., supra, 100 Cal.App.4th at pp. 127-128.)

(LD 4, pp. 12-15).

    2.  <u>Analysis</u>.

As an initial matter, Respondent contends that the claim is procedurally barred because no contemporaneous objection was made at trial.  (Doc. 34, p. 14). The Court agrees.

A federal court will not review a claim of federal constitutional error raised by a state habeas petitioner if the state court determination of the same issue "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). This rule also applies when the state court's determination is based on the petitioner's failure to comply with procedural requirements, so long as the procedural rule is an adequate and independent basis for the denial of relief. Id. at 730, 111 S.Ct. 2546. For the bar to be "adequate," it must be "clear, consistently applied, and well-established at the time of the [ ] purported default." Fields v. Calderon, 125 F.3d 757, 762 (9th Cir.1997). For the bar to be "independent," it must not be "interwoven with the federal law." Michigan v. Long, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). If an issue is procedurally defaulted, a federal court may not consider it unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749–50, 111 S.Ct. 2546.

In Bennett v. Mueller, the Ninth Circuit held:

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

322 F.3d 573, 586 (9th Cir.2003).

In Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir.2002), the Ninth Circuit held that California's contemporaneous objection doctrine is clear, well-established, and has been consistently applied when a party has failed to make any objection to the admission of evidence.  In Vansickel v. White, 166 F.3d 953 (9th Cir. 1999), the Ninth Circuit held that the contemporaneous objection bar is an adequate and independent state procedural rule.  It is undisputed that Petitioner did not challenge the sufficiency of the evidence for this prior conviction during the prior conviction phase of trial.  Nor did Petitioner respond in his Traverse to this argument after it was raised in the Answer by

1    Respondent.  Because Petitioner has not taken issue with the application of California's

2    contemporaneous objection rule, this Court need not consider Petitioner's claim.

3            Second, Respondent argues that the claim sounds only in state law and thus is not cognizable

4    in these habeas proceedings.  (Doc. 34, p. 15).  Again, the Court agrees.

5            As mentioned *supra*, federal habeas review of alleged state instructional error is "limited to

6    deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle

7    v. McGuire, 502 U.S. at 68.  In the present case, California law requires that a prior conviction be

8    proved beyond a reasonable doubt.  See People v. Towers, 150 Cal.App.4th 1273, 1277 (2007).

9    However, the United States Supreme Court has not determined that the standards of Jackson v.

10   Virginia and In re Winship concerning the standard of proof and the sufficiency of the evidence apply

11   to the determination of whether or not a defendant has suffered a prior conviction that is used to

12   enhance a sentence. See Dretke v. Haley, 541 U.S. 386, 395, 124 S.Ct. 1847 (2004) (noting that

13   various lower federal courts had assumed that Jackson's standards for sufficiency of the evidence

14   applied to recidivist enhancements but that the Supreme Court had not extended the protections of In

15   re Winship to proof of prior convictions used to support recidivist sentencing enhancements);

16   Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348 (2000) (holding that the fact of a prior

17   conviction is excepted from the general rule that any fact that increases the penalty for a crime beyond

18   the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt);

19   Almendarez–Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219 (1998) (holding that treating

20   recidivism solely as a sentencing factor did not offend due process, and expressly confirming that In re

21   Winship did not govern because it applied only to the elements of a crime); McMillan v. Pennsylvania,

22   477 U.S. 79, 84–91, 106 S.Ct. 2411 (1986) (holding that the Due Process Clause does not guarantee a

23   criminal defendant the right to a finding beyond a reasonable doubt of facts that are not elements of

24   the crime and are relevant only for purposes of sentencing); see Clemons v. Sowder, 34 F.3d 352 (6th

25   Cir. 1994)(procedures for proving prior convictions is question of state law beyond reach of federal

26   habeas).  Thus, with respect to the burden of proof required to support a prior conviction used for a

27   recidivist enhancement, there is not "clearly established" federal law.  Hence, the state court

28   adjudication could not justify federal habeas relief.

Finally, even assuming, arguendo, that the claim could be addressed on its merits, it must fail. The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows:

> "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324.   Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'" See id., quoting Jackson, 443 U.S. at 319. Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations. See id. at 957-958.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). However, mere suspicion and speculation cannot support logical inferences. Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-

32

1   1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of

2   aiding and abetting).

3            After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson

4   with an additional layer of deference.  Juan H., 408 F.3d at 1274.  Generally, a federal habeas court

5   must ask whether the operative state court decision reflected an unreasonable application of Jackson

6   and Winship to the facts of the case.  Id. at 1275.[1]

7            Moreover, in applying the AEDPA's deferential standard of review, this Court must also

8   presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); Kuhlmann v.

9   Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616 (1986).  This presumption of correctness applies to state

10  appellate determinations of fact as well as those of the state trial courts.  Tinsley v. Borg, 895 F.2d

11  520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court

12  determinations of legal questions or mixed questions of law and fact, the facts as found by the state

13  court underlying those determinations are entitled to the presumption.  Sumner v. Mata, 455 U.S. 539,

14  597, 102 S.Ct. 1198 (1981).

15           Recently, in Cavazos, v. Smith, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme

16  Court explained the highly deferential standard of review in habeas proceedings, by noting Jackson

17       "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions
         should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's
18       verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed
         with the jury. What is more, a federal court may not overturn a state court decision rejecting a
19       sufficiency of the evidence challenge simply because the federal court disagrees with the state
         court. The federal court instead may do so only if the state court decision was "objectively
20       unreasonable." Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678
         (2010) (internal quotation marks omitted).

21
         Because rational people can sometimes disagree, the inevitable consequence of this settled law
22       is that judges will sometimes encounter convictions that they believe to be mistaken, but that
         they must nonetheless uphold.
23

24  Cavazos, 132 S.Ct. at 3.

25       "Jackson says that evidence is sufficient to support a conviction so long as 'after viewing the
26       evidence in the light most favorable to the prosecution, any rational trier of fact could have

27  _____

28  [1]Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an
    additional degree of deference to a state court's resolution of sufficiency of the evidence claims.  See Chein v. Shumsky,
    373 F.3d 978, 983 (9th Cir. 2004); Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir. 2005).

33

found the essential elements of the crime beyond a reasonable doubt.' 443 U.S., at 319, 99 S.Ct. 2781.  It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 326, 99 S.Ct. 2781.

Cavazos, 132 S.Ct. at 6.

Here, as the 5th DCA noted, although Petitioner was indeed convicted in 1994 and sentenced in 1995, the abstract of judgment was amended in December 1999, following a successful state habeas challenge to reduce Petitioner's sentence.  Under such circumstances, it was perfectly reasonable for the jurors to find Petitioner guilty, as charged, of a "1999" conviction, even though the evidence indicated that he had been convicted in 1994 and sentenced in 1995.  Moreover, even if this de minimis discrepancy did constitute some technical evidentiary flaw under California law or variance between the evidence and the charging document, it certainly does not rise to the level of a federal due process violation.  See Estelle v. McGuire, 502 U.S. at 68.  For all of these reasons, then, Petitioner's final claim should be denied.

Based on the foregoing, Petitioner has failed to establish, in any of his claims, that the state court adjudication was either contrary to or an unreasonable application of clearly established federal law, or that, upon independent review by this Court, that he is entitled to habeas relief.

## **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

34

may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:  **February 26, 2013**        **/s/ Jennifer L. Thurston**
                                          UNITED STATES MAGISTRATE JUDGE